Filed 6/16/15  P. v. Winter CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062220 |
| v. | (Super.Ct.No. FELJS1403531) |
| RICHARD WINTER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lorenzo R. Balderrama, Judge.  Affirmed.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury found true an allegation defendant and appellant Richard Winter met the criteria to be deemed a mentally disordered offender under the Mentally Disordered Offender Act (MDOA) (Pen. Code, §§ 2962, 2966, subd. (b)).[1]  The court dismissed

---

[1]  All further statutory references are to the Penal Code.

1

defendant's petition requesting reevaluation of whether he met the criteria of section 2962 and continued defendant's civil commitment at a state hospital during his period of parole.

After counsel filed the notice of appeal, this court appointed counsel to represent defendant. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493], setting forth a statement of the case, a summary of the facts, and requesting this court to undertake a review of the entire record.[2] We affirm.

FACTUAL AND PROCEDURAL HISTORY

An officer testified that on February 3, 2006, he made contact with defendant after receiving a vandalism call. Defendant was taken into custody. "[T]he primary officer [placed defendant] into the police car, at which point [defendant] became very uncooperative and hostile." Defendant was "[v]erbally abusive" and spat upon the officer.

On October 1, 2011, another officer came into contact with defendant after being dispatched to an alleged battery. Defendant had attempted to use a debit card bearing a

---

[2] We acknowledge we are not required to conduct an independent *Wende* review of appeals from findings that a defendant meets the criteria of the MDOA. (*People v. Taylor* (2008) 160 Cal.App.4th 304, 312 ["[T]he *Anders/Wende* review procedures do not apply to postconviction commitments under the MDOA. Such review is required only for 'appointed appellate counsel's representation of an indigent *criminal* defendant in his first appeal as of right.' [Citation.]"].) However, we shall exercise our discretion to conduct such a review in the instant appeal. (See *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 7 ["The court may, of course, find it appropriate to retain the appeal."].)

2

female name at a retail establishment. The cashier questioned him about it and asked for identification. Defendant "got upset and refused to give the female the identification." Defendant slammed his bags on the countertop in anger. The cashier became frightened and threatened to call the police. Defendant knocked the phone out of her hand. Defendant scratched the victim's arm in doing so. Defendant pled guilty to assault and criminal threats.

On February 5, 2012, the same officer came into contact with defendant again when responding to a call that defendant was threatening someone with a screwdriver. When the officer arrived on the scene, there were several children 11 years of age and younger around. When speaking to defendant, the officer testified defendant's "demeanor was absolutely erratic." Defendant told the officer to "stop having those . . . kids running around like prostitutes, because they look invitational." Defendant threatened that "when he got out of jail, he would come back and rape the first child that he saw and kill the neighbor."

When the officer and his partner attempted to arrest defendant, he "attempted to physically assault" the officer. The officers "took [defendant] to the ground when he was resisting . . . the entire time and was kicking his legs . . . ." While the officers attempted to walk defendant toward the police car, he "turned his arms violently and his shoulders violently, attempted to head butt" one of the officers. Defendant was later convicted of criminal threats and assault upon a police officer.

On another occasion, defendant grabbed a female security guard by the hair, hit her head on the window, and then punched her in the back of the head after she flashed

3

her lights at him. Defendant was convicted of battery with serious bodily injury. Defendant also had separate convictions for disturbing the peace in 2007 and 2011.

A psychologist conducted a mentally disordered offender evaluation of defendant for the Board of Parole Hearings on April 2, 2014. She testified that prior to the interview she reviewed his medical records, including two previous mentally disordered offender evaluations; his current treatment plan; two admission assessments; two probation officers' reports; and other criminal records. The psychologist diagnosed defendant as suffering from a "delusional disorder with a persecutory type." She testified he "believes he's being persecuted, harassed, followed, [and] unduly singled out by police officers."

Defendant had been "treatment resistant and refused medicines at a particular point; . . ." The psychologist noted "at the point when [she] interviewed [defendant], [] his severe mental illness was not in remission, not controlled by medications or psychosocial support." She opined defendant's "severe mental illness . . . was either a cause or an aggravating factor in . . . his behavior in each of [his] crimes." The psychologist further observed defendant "does represent a significant threat of harm based upon his severe mental illness, . . ."

She opined defendant would likely decompensate in an unstructured environment: "[H]e does not comply with mental health treatment unless it is imposed upon him." The psychologist concluded defendant met the criteria of a mentally disordered offender.

Another psychologist, after reviewing defendant's records, interviewed him on April 4, 2014. The psychologist concluded defendant suffered from a severe mental

4

disorder, paranoid delusional disorder, which impaired his thought, perception of reality, and judgment. The psychologist observed defendant "has a long history of paranoid beliefs, particularly about police, but often generalizing to other people in positions of authority." The psychologist opined defendant's behavior presents as "a gross overreaction, inappropriate threats, and, again, it's due to his paranoia and sense that he's being persecuted and kind of an overreaction as a result." Defendant "is so paranoid about people in positions of authority that it's sort of a peremptory attack. I'm going to hurt you. I'm going to attack you before you have a chance to hurt me. There's, again, his paranoia directly contributing to the crime, the assaultive behavior."

The psychologist further noted defendant is "psychotic. He needs medication. So there's been a longstanding sort of history and acknowledgment that he has severe mental problems, and that he needs treatment." Nevertheless, defendant was not consistently medication compliant.

Defendant had been admitted to Patton State Hospital in 2008 when it was determined he was not mentally competent to stand for trial. The psychologist observed defendant's mental disorder is one of the causes or an aggravating factor in his commitment offenses.

The psychologist testified defendant was not in remission when interviewed and "represents a severe . . . danger to others due to his severe mental disorder." Defendant would be more likely to behave violently and not comply with medication when in an unstructured environment. At one point upon release, defendant had informed his probation officer he had stopped taking his mediation because he felt he did not need it.

5

The psychologist concluded defendant qualified as a mentally disordered offender. Defendant's treating psychologist testified that up to February 4, 2014, defendant had received 90 days of mental health treatment, for schizophrenia, paranoid type.

Defendant's parole release date was February 4, 2014. On June 25, 2014, the Board of Parole Hearings determined defendant qualified as a mentally disordered offender and continued his commitment. Defendant filed a petition on July 31, 2014, seeking review of the Board of Parole Hearings' determination. After the jury found defendant met the criteria of a mentally disordered offender, the court dismissed defendant's petition and continued his civil commitment.

## DISCUSSION

We offered defendant an opportunity to file a personal supplemental brief, which he has not done. We have now concluded our independent review of the record and find no arguable issues.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.

KING
J.

6